TRUE, Respondent, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

(173 N. W. 642).

(File No. 4501.   Opinion Filed June 3, 1919).

1.  **Appeals—Error—Evidence—Negligence, Killing of Cattle—Killing of Injured Animals, Removing Hides, Objection to Evidence as "Immaterial," Futility.**

Where, in a suit against a railway company for damages for negligently killing plaintiff's cattle, defendant's objection to evidence that its employees killed some of the injured stock and removed hides from all the dead ones, as "immaterial,"

was unavailing; since such objection, without suggesting why or wherein it was immaterial, is insufficient.

2. **Same—Negligence, Killing of Livestock—Instruction re "Due Care," Objection, No Further Instruction Asked, Effect.**

Where, in a suit for damages for negligently killing plaintiff's cattle, the jury was fairly advised as to what care was due from defendant, **Held,** that if defendant thought otherwise, he should have asked for further instruction.

3. **Same—Recovery for Killing Livestock—Statutory "Prima Facie" Case, Introduction or Further Evidence, Effect, Re Burden of Proof.**

Where, in a suit for damages for negligently killing plaintiff's cattle by running a train upon them, **Held,** construing Code Civ. Proc. 1903, Sec. 748, making the killing of livestock prima facie evidence of carelessness and negligence, that the fact that plaintiff did not rest his opening case upon the "prima facie" case made but introduced other evidence tending to prove negligence did not take from defendant's shoulders the burden of overcoming the inference said statute commanded the jury to draw.

4. **Evidence—Damages for Killing Livestock—Statute re "Prima Facie" Case, Effect as Declaration of Value or Evidence— Previous Decision Criticized.**

Code Civ. Proc. 1903, Sec. 748, providing that killing or damaging of livestock is "prima facie evidence" of carelessness and negligence, is in effect a legislative edict to courts and, through courts, to juries, that they shall, not may, infer one fact from the other—is a statutory declaration of probative value of evidence, sometimes wrongfully termed "A presumption of fact"; Dougherty v. Railway Co., 20 S. D. 46, criticized wherein it held the burden of proof under said statute always remains with railway company after plaintiff has proven killing of his stock by defendant's locomotive, and wherein it held said statute declared but a presumption.

5. **Evidence—"Presumption," "Inference," Distinguished, Defined, Re Effect on Jury, On Burden of Proof—"Contrary" Evidence, Interpreted.**

A clear distinction exists between a presumption and an inference, as such terms are used in jurisprudence, presumptions being creatures of law, inferences the fruit of the human mind, the effect of which, whether statutory or judicial, being to invoke a rule of law compelling jury to reach the conclusion in absence of evidence to contrary; and as soon as "contrary," evidence is introduced, the presumption vanishes; but an "inference" drawn by jury, either voluntarily or because of court's instruction, remains to be weighed against any inferences properly to be drawn from other or "contrary" facts proven. A

"presumption" compels adverse parties to introduce "contrary" proof—the presumption then ends; while an "inference," even one created by statute, remains after "contrary" proof is introduced, and adverse party has burden of overcoming such "inference," whether it stands without other support or whether strengthened by inferences drawn from other facts proven.

6. **Appeals—Error—Instruction Re Contributory Negligence—Other Instruction Covering, Effect.**

Objection that trial court refused a requested instruction concerning contributory negligence, is unavailing where everything contained therein was covered by a clear and specific instruction on said issue, previously given.

7. **Same—Damages for Killing Livestock—Instruction Re Contributory Negligence Re Driving Cattle From Crossing and Oncoming Train—Questions for Jury—Allowing Cattle to "String Out," Whether Contributory Negligence.**

Where, in a suit against a railway company for damages for negligently killing plaintiff's livestock by running its train upon them at a crossing after dark; there being ample evidence of defendant's negligence; it appearing that plaintiff's drove of 240 cattle was being driven by the former owner and plaintiff's assistants over a railroad grade crossing approached by grades, that part of the herd in advance and which had passed the crossing, were yarded at plaintiff's place beyond, that the former owner in rear of the 200 remaining head, (the light from the locomotive shining upon the cattle at the crossing), hastily rode to the crossing, where part of the bunch were huddled together watching the head light of the on-coming train on a straight grade of over half a mile, reaching the crossing but a little in advance of the train, which was a few minutes late and maintaining its full speed, he refraining from attempting to drive the cattle from the crossing because of danger to his life from the train; that one of the assistants rode back from the stockyard to the crossing and drove on such animals as left it, but did not venture onto the crossing to get the other cattle off; that by the locomotive light these cattle could have been seen by engineer when at least 1000 feet away, that he could have stopped the train in 500 or 600 feet, **Held,** that the questions (a) whether the drovers were negligent in allowing the cattle to string out, (b) whether, if not negligent in that respect, they were so in attempting to drive the leading bunch of cattle across the crossing without leaving one of said assistants there, and (c) whether, conceding no negligence in either of said matters, yet whether they were so in failing to drive the cattle from the crossing after discovering approach of train, were questions for jury; and trial court properly refused to direct verdict for defendant; that it will be presumed

court did not err, this in view of verdict for plaintiff. **Held,**
further, that trial court could not have rightfully held, as matter
of law, that there was negligence in allowing a drove of 200
cattle to string out on the road for some 300 yards before
reaching the crossing.

Appeal from Circuit Court, Butte County. Hon. JAMES Mc-
NENNY, Judge.

Action by J. A. True, against the Chicago & Northwestern
Railway Company, a corporation, to recover damages for negli-
gently killing and injuring plaintiff's livestock. From a judg-
ment for plaintiff, and from an order denying a new trial, defen-
dant appeals. Affirmed.

*A. K. Gardner,* for Appellant.

*Robert C. Hayes,* and *John T. Heffron,* for Respondent.

(3)   To point three, Appellant cited:

Baron v. Iron Co. (Pa.) 51 Atl. 979.

(7)   To point seven, Appellant cited:

Elliott on Railroads, Sec. 1209.

Keeney v. Ry. Co. (Ore.), 24 Pac. 233.

Respondent cited:

Bates vs. Fremont, E. & M. V. R. Co., 4 S. D., 394; Borne-
man v. C. St. P. & O. Ry. Co., 104 N. W. 208; Jones v. C. M. &
St. P. Ry. Co., 128 N. W. 323.

WHITING, J. Action to recover damages alleged to have
been suffered through the negligence of defendant's employees,
resulting in the destruction of 13 head of cattle by a locomotive
engine belonging to defendant. Verdict and judgment for plain-
tiff. From the judgment and an order denying a new trial this
appeal was taken.

[1]   Appellant assigns as error the receipt, over objection
that it was immaterial, of evidence showing that, after the acci-
dent at which these cattle were injured, some being killed, the
employees of appellant killed some of the injured animals and re-
moved the hides from all the dead ones. If counsel had presented
to the trial court, in connection with the objection that the evi-
dence sought was immaterial, the reasons which he now urges
in support of his claim that such evidence was immaterial, it is
quite probable that the trial court would have sustained the objec-
tion; but it is too well settled to need citation of authority in this

jurisdiction that an objection, urging immateriality of evidence offered, but not suggesting why or wherein such evidence would be immaterial, is insufficient upon which to predicate error.

[2, 3] . Appellant assigns as error the giving of an instruction wherein the court advised the jury that, upon proof of the killing of the cattle, the burden shifted to the defendant to show that it was using due care. Appellant contends that the court did not define "due care." We think the jury were fairly advised as to what care was due from appellant; if appellant thought otherwise, it should have asked for a further instruction. Appellant, in its assignments, states that this instruction was "not applicable to the facts proven"; but the real point of his argument seems to be that such instruction was improper because of the order in which the facts were proven. Respondent did not rest his opening case, so far as the issue of negligence was concerned, upon the "prima facie" case made, under section 748, Code Civ. Proc., by proof of injury to the cattle, but he introduced other evidence tending to prove negligence. Appellant contends that, because of this fact, it never had the burden of proof on the question of negligence. Appellant says:

"This court has frequently had occasion to point out that a presumption cannot be weighed as against proof, but that it simply saves the necessity of proof in the first instance. This presumption was clearly waived, and the plaintiff, having assumed to prove acts of negligence, took with this burden the rule with reference to the burden of proof, and in this case the burden did not shift as a matter of law."

[4, 5] Appellant has failed to recognize that the statute does not create a mere "presumption" of negligence from the fact of the injury to animals, but declares the strength of the inference of negligence that shall be drawn from the fact of the injury to animals under certain circumstances. This statute reads:

"The killing or damaging of any horses, cattle or other stock, by the cars or locomotives along said railroad or branches; shall be prima facie evidence of carelessness and negligence of said corporation."

In Dougherty v. Railway Co., 20 S. D. 46, 104 N. W. 672, this court held that, because of said section 748, supra, the burden of proof as to negligence always remains with the railway

company after a plaintiff has proven the killing of his stock by the cars or locomotives of defendant. But in that case this court unfortunately appears to have assumed that section 748 declared but a presumption. To declare by statute that a certain fact is "prima facie evidence" of another fact is in effect a legislative edict to courts and, through courts, to juries, that they *shall,* not *may,* infer the one fact from the other—it is in effect a statutory declaration as to the probative value of one fact as evidence of another fact—a creation, by legislative enactment, of what is often wrongfully termed a "presumption of fact." There is a clear distinction, often overlooked, between a presumption and an inference as such terms are used in jurisprudence—presumptions are the creatures of law, inferences the fruits of the human mind. The effect of a presumption—whether statutory or judicial—"is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent." Wigmore on Evidence, § 2491. As soon as "contrary" evidence is introduced the presumption vanishes (Peters v. Lohr, 24 S. D. 605, 124 N. W. 853; Elliott on Evidence, §§ 92, 93) ; but an inference drawn by a jury, either voluntarily or because of the direction of the law, remains to be weighed against any inferences that may properly be drawn from other or "contrary" facts proven. We pointed out in Peters v. Lohr, supra, how a "presumption" fell before an "inference" created by a statute which made a writing "prima facie" evidence of a certain fact "contrary" to the fact "presumed" by law. A "presumption" compels the adverse party to introduce "contrary" proof—the presumption then ends. An "inference," even one created by statute, remains after "contrary" proof is introduced, and the adverse party has, in order to prevail, the burden to overcome such "inference" whether such inference stands without other support or whether it be strengthened by inferences drawn from other facts proven. It follows then that respondent, by introducing further evidence on the question of appellant's negligence, did not take from appellant's shoulders the burden of overcoming the inference which the statute commanded the jury to draw.

Another instruction was excepted to, but, to our minds, such instruction was so clearly proper that we do not deem any discussion thereof called for.

[6]   Appellant assigns as error the refusal of the court to give an instruction requested.  This instruction related to the only really serious question before us on this appeal, the question of contributory negligence.  Appellant pleaded contributory negligence, and contends that the evidence was such that the court should, as requested by appellant, have directed a verdict for appellant; and that, having submitted this cause to the jury, it should have given this instruction.  The instructon requested was eminently proper, but everything therein contained was covered by a most clear and specific instruction on the issue of contributory negligence given by the learned trial court.

[7, 8]   Appellant moved for a directed verdict, contending that there was no proof of negligence on its part, and that, even if there were negligence on its part, the conceded facts establish contributory negligence.  There was ample evidence of appellant's negligence.  Construing the evidence, as the trial court was in duty bound to on such motion, in favor of respondent, the facts, so far as they relate to the issue of contributory negligence, were as follows: Respondent had, the morning of the day when these cattle were injured, purchased a drove of some 240 cattle. They were several miles from his place, and the vendor and one of respondent's employees undertook to drive them to respondent's farm.  This took until after dark.  This drove of cattle approached respondent's farm from the north on a highway running north and south.  Crossing the highway, just north of respondent's yards and buildings, was appellant's road.  This road crossed the highway at an acute angle, the railway running nearly north and south, but somewhat northeast and southwest.  The railroad grade at the crossing was some 10 to 12 feet above the surrounding country and the highway approached such crossing by a gradual grade.  The drove of cattle became divided, and the drover got to respondent's place with a small bunch and, with the help of another one of respondent's employees, yarded this bunch.  Meantime the remainder of the cattle, some 200 in number, were scattered along the road from a point some 300 yards north of the crossing to such crossing.  In the rear of these cattle was their former owner.  At this time and as the leading cattle went up the grade onto the crossing, this drover saw the light from the locomotive shining upon such cattle.  This was the first knowledge this man

had of the fact that the highway was near the railroad. The train was in fact a few minutes late—it might be inferred that the man who helped yard the first bunch knew of the lateness of the train, but there was no direct evidence of that fact. It was clear that the other men did not know of that fact. The cattle on the crossing turned and faced the on-coming light. The drover hurried his horse, and, after going a few yards, was able to see the train coming back of him from the north some half a mile. He hurried to the crossing, but not there but a little ahead of the train, which had maintained its full speed. Feeling that to attempt to drive the cattle from the crossing would endanger his own life, he refrained from such attempt. The other two men, having yarded the small bunch, were some 50 or 60 yards away from the crossing when they discovered, as had the other drover, the train some half mile down the track, and some 30 or more cattle huddled on the crossing and standing facing the on-coming light. There is no evidence as to what one of these two men did. The other rode up near the crossing and drove toward the south such animals as left the crossing, but he did not venture up onto the crossing, to try and get the cattle off. The railway track was straight for a half mile north of the crossing, and from the time the light first struck the cattle on the crossing it remained on them until they were struck by the engine. By the light of such engine these cattle could have been seen by the engineer when at least 1,000 feet away, and he could have stopped the train in 500 to 600 feet. Did the above facts show, as a matter of law, either: (a) That these drovers were negligent in allowing the cattle to string out? (b) That, if not negligent in the above respect, they were negligent in attempting to drive the cattle across the crossing without one of the men staying at the crossing? (c) That, conceding no negligence in either of the above matters, yet they were negligent in failing to drive the cattle from the crossing after discovering the approach of the train? Could reasonable men have found that these men were not negligent? That is the question presented to the trial court. Unless it could say that there was nothing for a jury to consider, nothing from which it might find want of negligence, it was bound to submit the issue to the jury. We must presume the court did not err. Moreover 12 men by their verdict have so said. We think it is clear

that the trial court could not have rightfully held, as a matter of law, that it was negligence to allow a drove of 200 cattle to string out as this drove did. If the head drover supposed the train had gone by, as he had a right to suppose, then certainly a jury could reasonably say that there was no lack of due care in his going ahead and yarding the bunch in his immediate charge. There was no evidence as. to whether it would have been easy or even possible for these men to have driven this bunch of some 30 to 40 cattle off from the crossing, drawn as they seemed to have been by the glare of the on-coming light. Would it have been dangerous for these men to have attempted it? Did these men have a right to assume that the trainmen saw the cattle; that, seeing the cattle apparently transfixed and helpless, they would stop the train; and to so assume until the. train reached a point so near the cattle as to show an intent on the part of the trainmen not to stop? Of course if they had a right to so assume and to rely upon such assumption, they were not negligent because they would not then be left time to remove the cattle. It seems to us that these were matters proper to be left to the decision of the jury.

The judgment and order appealed from are affirmed.